UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                    :

OCTAVIO RAMOS,                        :

                         Plaintiff,       :

                                               :              05 Civ. 3155 (GEL)

          -v-                     :

                                             :          **OPINION AND ORDER**

THE CITY OF NEW YORK, NEW YORK CITY  :
POLICE DEPARTMENT, POLICE OFFICER   :
TIMOTHY STANLEY, AND POLICE OFFICER :
FRANK BENITEZ,                     :

                                             :

                       Defendants.     :
------------------------------------------------------------x

Stephen R. Krawitz, Esq., Stephen R. Krawitz, LLC,
New York, New York, for Plaintiff.

Anna Nguyen, Assistant Corporation Counsel
(Michael A. Cardozo, Corporation Counsel of
the City of New York, on the brief), New York,
New York, for Defendants.

GERARD E. LYNCH, District Judge:

       Plaintiff Octavio Ramos brought this action against the City of New York, its police

department, and the two individual police officers who arrested him on September 18, 1998, in

connection with a dispute between Ramos and his building superintendent over whether the

superintendent could enter Ramos's apartment during a building inspection.  Defendants now move

for dismissal of the Amended Complaint with prejudice under Rule 12(c) of the Federal Rules of

Civil Procedure.   The motion will be granted.

## BACKGROUND

       Plaintiff was arrested on September 18, 1996, by defendants Timothy Stanley and Frank

Benitez, officers of the New York City Police Department.  His Amended Complaint alleges that

the arrest in question took place at an apartment on West 170th Street in Manhattan and that it was

based upon false accusations, but sets forth virtually no other facts relating to the arrest.  The

remaining background facts are therefore drawn principally from an opinion by the Appellate

Division of the New York State Supreme Court in the state criminal proceedings that followed

plaintiff's arrest.[1]  See People v. Ramos, 3 Misc. 3d 127(A), 2004 WL 906594 (1st Dep't 2004).

Plaintiff, the president of a tenants' association in his apartment building, had arranged for a

City housing inspector to visit his mother-in-law's apartment on the date in question.  When the

building's superintendent, Victor Cassanova, sought to enter the apartment along with the inspector,

plaintiff refused to let him in, either pushing him away or blocking his entry by extending his arm

across the door.  Id. Cassanova complained to the police, who arrested plaintiff.  Plaintiff was

convicted of second-degree harassment, see N.Y. Penal Law § 240.26, and resisting arrest, see N.Y.

Penal Law § 205.30, on January 21, 2000.  The Appellate Division overturned his conviction on

April 12, 2004, holding that:

> Whatever incidental physical contact may have occurred during this
> rapidly escalating, housing-related dispute was not shown beyond a
> reasonable doubt to have been actuated by defendant's intent to
> "harass, annoy or alarm" (Penal Law § 240.26) the complainant.
>
> Also infirm is the defendant's conviction of resisting arrest, there
> being no reasonable cause to authorize defendant's arrest on a
> violation harassment charge involving events which took place
> outside the presence of the arresting officer.  Nor can the People be
> heard to argue that defendant's September 18, 1998 arrest was
> predicated upon a misdemeanor menacing charge stemming from an
> unrelated incident that allegedly occurred two months earlier, a
> theory unsupported by the credible trial evidence and inconsistent
> with the jury charge as given.

---

[1] The issue of whether facts drawn from the Appellate Division's opinion may be
considered in this motion for judgment on the pleadings is discussed below.  Supra note 2.

People v. Ramos, 2004 WL 906594, at *1.  The latter incident is not mentioned in the Amended

Complaint, but plaintiff's brief argues that the officers' decision to arrest him was based on the

superintendent's statement that plaintiff had hit the superintendent on the chest and threatened him

with a crowbar on June 18th, 1998.  (Pl. Opp. 11.)

Plaintiff filed a complaint in this Court on March 23, 2005, and an Amended Complaint on

May 4, 2005, both setting forth claims pursuant to 42 U.S.C. § 1983 for false arrest, assault and

battery, false imprisonment, and malicious prosecution on the basis of this arrest.  On February 28,

2006, plaintiff by stipulation withdrew his claim for assault and battery, as well as all claims against

defendant New York City Police Department.

## DISCUSSION

Courts assess a motion for judgment on the pleadings under Rule 12(c) under the same

standard as a motion to dismiss under Rule 12(b)(6), accepting the allegations contained in the

complaint as true and drawing all reasonable inferences in favor of the plaintiff.  Greco v. Trauner,

Cohen & Thomas, L.L.P., 412 F.3d 360, 363 (2d Cir. 2005).  The complaint may not be dismissed

unless it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to

relief.  Id.  When adjudicating a motion to dismiss, the "issue is not whether a plaintiff will

ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."

Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996) (internal quotation marks and citations omitted).[2]

---

[2] Both parties rely on facts described in the Appellate Division opinion in People v.
Ramos, and the transcript of the criminal proceedings in that matter, see D. Br. 12, Pl. Opp. 6,
10, 11, although the complaint does not refer to these documents, which are neither attached to
the complaint nor incorporated into it by reference.  See Kramer v. Time Warner Inc., 937 F.2d
767, 773 (2d Cir. 1991) (noting that a court considering a motion to dismiss may consider
documents attached to the complaint as exhibits or incorporated in it by reference).

I.      **Municipal Liability**

Defendants argue that plaintiff's claims against the City of New York should be dismissed

because the Amended Complaint fails to allege facts that could support a finding of muncipal

liability under § 1983.  In Monell v. Department of Social Services of the City of New York, 436

U.S. 658 (1978), the Supreme Court held that a municipality is a "person" within the meaning of

§ 1983 and can incur liability pursuant to the statute.  Id. at 690.  Claims against a municipality

under § 1983 may proceed, however, only if "the action that is alleged to be unconstitutional

implements or executes a policy statement, ordinance, regulation, or decision officially adopted and

promulgated by that body's officers" or is conducted "pursuant to governmental 'custom' even

though such a custom has not received formal approval through the body's official decisionmaking

channels."  Id. at 690-91.

Plaintiff has alleged no relevant facts concerning a policy or custom underlying his

treatment.   Instead, he argues that the allegedly unconstitutional conduct itself demonstrates that

the City failed to train its officers in a way that would have prevented it.  This argument is circular,

and if accepted would give rise to municipal liability in every § 1983 case.  The complaint identifies

---

Ordinarily, a district court considering a motion to dismiss may refer to matters outside
the complaint only if the motion to dismiss is converted into a motion for summary judgment.
See Fed. R. Civ. P. 12(c); see also Global Network Commc'ns, Inc. v. City of New York, 458
F.3d 150, 154 (2d Cir. 2006).  However, when the plaintiff has actual notice of all the
information in the movant's papers and has relied upon the extraneous documents in framing the
complaint, the rule need not be strictly applied.  Chambers v. Time Warner, Inc., 282 F.3d 147,
153 (2d Cir. 2002).  Here, Plaintiff has relied heavily on the Appellate Division opinion and the
transcript of his criminal proceedings in his brief opposing the present motion, which stem from
his own criminal trial.  It is therefore beyond question both that he had actual notice of the
information contained in those documents, and that he relied on them in drafting the complaint.
Accordingly, it is proper to consider them in disposing of this motion without converting it into a
motion for summary judgment.

no particular training practice that led to plaintiff's arrest; in fact, the Amended Complaint never mentions the conduct of any city official other than the arresting officers.  Plaintiff asserts that "it would have been more appropriate for the police officers to issue a 'desk appearance ticket' (DAT) to plaintiff instead of making an arrest."  (Pl. Opp. 18.)  Even if this were so, it hardly implicates a custom or practice of any City agency.[3]  Nor does plaintiff make any assertions of fact regarding municipal customs or practices that might have led to his allegedly malicious prosecution.  Without any indication of what policy or custom led to the allegedly unconstitutional conduct, plaintiff cannot show that municipal liability is appropriate here.  Accordingly, all claims against the City must be dismissed.

## II.    Statute of Limitations on False Arrest/False Imprisonment

The government argues that plaintiff's claims for false arrest and false imprisonment are barred by the statute of limitations.  The original complaint was filed on March 23, 2005.  In § 1983 actions, federal courts borrow the relevant state statute of limitations, which for New York is three years.  See Owens v. Okure, 488 U.S. 235, 251 (1989).  The question, then, is whether the claims for false arrest and false imprisonment accrued on the date of the arrest in 1998 or the date plaintiff's conviction was overturned in 2004.

Federal law governs the question of when the statute of limitations in a § 1983 false arrest action accrues.  Covington v. City of New York, 171 F.3d 117, 121 (2d Cir. 1999).  As a general rule, the time of accrual under federal law is the point at which the plaintiff knows or has reason to

---

[3] A claim that an officer should have used a summons or DAT rather than executing an arrest does not state a constitutional claim, but merely an argument that the officers did not follow local procedures.  Such an argument actually undermines plaintiff's claims of municipal liability, by suggesting the existence of a municipal practice or custom contrary to the actions of the particular officers about whom plaintiff complains.

know of the injury which is the basis of his action, id., in this case clearly the time of arrest.  Id.  In

§ 1983 cases, however, the principle of Heck v. Humphrey, 512 U.S. 477 (1994), bars a plaintiff

from bringing a false arrest action when a ruling in the plaintiff's favor would necessarily imply the

invalidity of a state criminal conviction, unless that conviction has already been invalidated.  Id. at

486-87.  Heck created a category of plaintiffs whose § 1983 actions could not be commenced until

they persuaded some other duly empowered body to declare their convictions invalid.  But doing so

could easily take more than three years.  Accordingly, for those plaintiffs whose § 1983 actions

would be barred by Heck, the statute of limitations begins to run when the conviction is

invalidated—in other words, when the § 1983 action first becomes available.  Covington, 171 F.3d

at 122.

    The statute of limitations accrues at this later date only for those plaintiffs whose § 1983

actions would have been barred by Heck during the time before their convictions were declared

invalid.  Plaintiff can therefore benefit from the later date of accrual only if he can show that his

false arrest action *necessarily* implies the invalidity of his criminal conviction.  See Heck, 512 U.S.

at 487 n.7.[4]  False arrest claims imply the invalidity of conviction only where the sole basis for the

conviction was evidence seized as a result of the illegal arrest.  Covington, 171 F.3d at 123; see

Washington v. Summerville, 127 F.3d 552, 556 (7th Cir. 1997) ("a wrongful arrest claim, like many

Fourth Amendment claims, does not inevitably undermine a conviction because a plaintiff can wage

_____

[4] The question whether a false arrest action would necessarily imply the invalidity of a
conviction is "inherently a factual one."  Covington, 171 F.3d at 122.  Nonetheless, for some
kinds of claims this question can be resolved as a matter of law.  See, e.g., Amaker v. Weiner,
179 F.3d 48, 51, 52 (2d Cir. 1999) (holding that a claim under § 1983 for withholding of
exculpatory evidence calls into question the validity of the conviction, so the statute of
limitations begins to run only upon invalidation of the conviction).

a successful wrongful arrest claim and still have a perfectly valid conviction.").

In this case, plaintiff does not allege, in the complaint or elsewhere, that any evidence obtained as a result of his arrest played any part in his conviction (indeed, he points to no evidence seized as a result of the arrest at all), so it can hardly be said that "the only evidence for conviction was obtained pursuant to [the allegedly false] arrest." Covington, 171 F.3d at 123. Plaintiff says he is "unable to determine whether the prosecution pressed the charges against Octavio Ramos by relying solely on Mr. Cassanova's complaint, or some other extrinsic source which has not yet been disclosed." (Pl. Opp. 6.) But plaintiff's criminal trial is over; surely, if evidence obtained as a result of his arrest had been used at that trial, that fact would already have emerged and could have been alleged in plaintiff's complaint.[5]

Because the evidence on which the conviction was based was obtained independently of the allegedly wrongful arrest, plaintiff cannot show that a successful challenge to his arrest would necessarily have invalidated his conviction. There was therefore no period in which Heck v. Humphrey would have barred his challenge, and so the statute of limitations accrued at the time of the allegedly false arrest. Accordingly, plaintiff's claims for false arrest and false imprisonment are time-barred, and we need not consider defendants' arguments that they should be dismissed on the merits or that qualified immunity would apply.

---

[5] The plaintiff's briefs and the Appellate Division opinion indicate two possible bases for plaintiff's conviction. The first is the testimony of the superintendent and putative victim Victor Cassanova, who complained to the police. Cassanova's claims of an attack by plaintiff, however, were the cause of the arrest, not its fruit. The second is a report of the June 18, 1998, incident involving a crowbar. This report, months old, was obviously not obtained as a result of the arrest.

III.   **Malicious Prosecution**

The elements of a §1983 claim based on malicious prosecution are borrowed from state tort law.  Lee v. Edwards, 101 F.3d 805, 810 n.4 (2d Cir. 1996).  To prove malicious prosecution, a plaintiff must make four showings: (1) that the defendant initiated a criminal proceeding; (2) that the proceeding was terminated favorably to the plaintiff; (3) that there was no probable cause for the criminal charge, and (4) that the defendant acted maliciously.[6]  Rothstein v. Carriere, 373 F.3d 275, 282 (2d Cir. 2004).  The Amended Complaint fails to meet this "heavy burden."  Id.

A.      **Initiation of a Criminal Proceeding**

The defendants argue that Officers Stanley and Benitez do not satisfy the first prong of the test, because they did not initiate the criminal proceedings against plaintiff and were not actively involved in them.  D. Br. at 14-15.   This argument appears precluded by relevant cases from the Second Circuit and the Supreme Court holding police officers involved in a suspect's arrest played a role in initiating the prosecution, and are therefore open to liability for malicious prosecution.

While police officers who merely testify against a criminal defendant may enjoy absolute immunity from malicious prosecution claims, those who "played a role in initiating a prosecution" do not.  White v. Frank, 855 F.2d 956, 959 (2d Cir. 1988).  White v. Frank noted that the Supreme Court, in holding that police officers who obtained an arrest warrant did not have absolute immunity against suits for malicious prosecution, see Malley v. Briggs, 475 U.S. 335, 340-341 (1986), relied upon the common law rule that "one who procured the issuance of an arrest warrant by submitting a complaint could be held liable if the complaint was made maliciously and without

---

[6] Because the statute of limitations for malicious prosecution runs from the date of favorable termination of the underlying criminal action, Murphy v. Lynn, 53 F.3d 547, 548 (2d Cir. 1995), this claim, unlike the false arrest claim, is timely.

probable cause." <u>Malley</u>, 475 U.S. at 340-341.  Thus, because the Second Circuit has assumed that

police officers are subject to liability for malicious prosecution in the same way as any other

defendant, <u>see</u> <u>White v. Frank</u>, 855 F.2d at 962 n.6, it appears that police officers who procure the

issuance of an arrest warrant may be sufficiently involved in the prosecution to give rise to

malicious prosecution liability.  In this case, Officers Benitez and Stanley did not procure a warrant,

but their involvement was functionally equivalent or greater, because they actually arrested

plaintiff, without a warrant, on their own authority.  This is enough to constitute "initiation" for

purposes of a malicious prosecution claim.

      **B.**       **Favorable Termination**

      The defendants also argue that plaintiff fails to allege a favorable termination.  <u>See</u> <u>Murphy</u>

<u>v. Lynn</u>, 118 F.3d 938 (2d Cir.1997) ("Where the prosecution did not result in an acquittal, it is

deemed to have ended in favor of the accused, for these purposes, only when its final disposition is

such as to indicate the innocence of the accused.").  The opinion of the Appellate Division could

hardly have been more favorable to plaintiff in the conventional sense; his conviction was

"reversed, on the facts, and as a matter of discretion in the interest of justice, and the accusatory

instrument [was] dismissed."  <u>People v. Ramos</u>, 2004 WL 906594, at *1.

      The City argues, however, that because the Appellate Division referred to its power to

dismiss a prosecution "in the interest of justice," its disposition of the case did not necessarily

indicate innocence, and is therefore not a favorable termination.  It is true that dismissals by the

prosecution "in the interests of justice" under New York Criminal Procedure Law § 170.40 are

generally considered not to be dispositions in favor of the accused.  <u>Murphy v. Lynn</u>, 118 F.3d 938,

949 (2d Cir. 1997).  However, this is because "dismissals of these types may not end the state's

pursuit of the accused on the same charges, for a renewed prosecution may be commenced in a proper court on a facially sufficient pleading." Id. To determine whether a dismissal of this kind is a favorable termination, courts examine the actual reasons for it. See Ricciuti, 124 F.3d at 131 ("When the termination of a case is indecisive because it does not clearly address the merits of the charge, the underlying facts must be examined to determine "whether the failure to proceed implies a lack of reasonable grounds for the prosecution.") (quotation marks and citations omitted).

In this case, the Appellate Division could not have stated more clearly that plaintiff's conviction was being reversed on the merits. Although the court made a passing reference to "the interest of justice," its entire discussion dealt with the lack of evidence supporting plaintiff's conviction. Accordingly, its decision constituted a favorable termination.

**C.      Lack of Probable Cause**

Although plaintiff's allegations satisfy the first two elements of a malicious prosecution claim, they cannot satisfy the third. The Amended Complaint contains no factual allegations whatsoever concerning what information the police had when they arrested him. "If a civil rights complaint is to survive a motion to dismiss, it must make specific factual allegations indicating a deprivation of rights." Fonte v. Bd. of Managers of Continental Towers Condo., 848 F.2d 24, 25 (2d Cir. 1988). Conclusory, vague, or general allegations of violations of constitutional rights may be dismissed on the pleadings. Boddie v. Schnieder, 105 F.3d 857, 862 (2d Cir. 1997).

In this case, plaintiff fails to allege any facts that would support a finding of no probable cause. An officer has probable cause to arrest when the facts available to the officer at the time of the arrest are "sufficient to warrant a prudent person to believe that the suspect had committed or was committing an offense." Ricciuti, 124 F.3d at 128. If an officer has received information from

some person, normally the putative victim or eyewitness, who it seems reasonable to believe is telling the truth, he has probable cause.  Oliveira v. Mayer, 23 F.3d 642, 647 (2d Cir. 1994).

Plaintiff was arrested on the basis of information the officers had received from the putative victim.  (See Crim. Ct. Tr. at 30 (Cassanova testimony); Pl. Br. at 11 (asserting that the decision to arrest was based on Cassanova's statements)).  Ordinarily, this could be enough to give rise to probable cause.  Plaintiff's briefs argue (without referring to factual allegations in the complaint or any other documents) that the officers should have known of the rent dispute underlying the events in question.[7]  (Pl. Br. at 4, 10.)  Even if they had known of a potentially explosive dispute in progress, this fact would have made it seem to a reasonable officer *more* likely, not less likely, that an assault had occurred.  Plaintiff also argues that a reasonable police officer would have "given consideration to plaintiff's version of the facts."  Pl. Br. at 11-12.  But it is well-established that "once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." Ricciuti, 124 F.3d at 128, citing Baker v. McCollan, 443 U.S. 137, 145-46 (1979).  In short, plaintiff alleges no facts undercutting probable cause.

Plaintiff also argues that the defendants are collaterally estopped from denying the lack of probable cause by the Appellate Division opinion, which concluded that the police lacked "reasonable cause to authorize defendant's arrest on a violation harassment charge involving events which took place outside the presence of the arresting officer."  People v. Ramos, 2004 WL 906594,

---

[7] Plaintiff's brief states, "It should be noted that defendants admit in their Memorandum in Support of the Motion to Dismiss that Mr. Cassanova's complaint itself did NOT amount to actual probable cause to arrest the plaintiff. [Defendants' Memorandum, p. 12]." (emphasis and brackets in original).  On the cited page, defendants' brief argues exactly the opposite proposition.

at *1.  However, the doctrine of collateral estoppel, or issue preclusion, applies only where an identical issue was litigated and decided in a prior proceeding and was necessary to a judgment on the merits in that proceeding.  See Uzdavines v. Weeks Marine, Inc., 418 F.3d 138, 146 (2d Cir. 2005).  Any issue of probable cause to arrest was unnecessary to the Appellate Division's opinion, which required only a finding of insufficient evidence to support the conviction.  Moreover, the language quoted above deals with a state law requirement that warrantless arrests for non-felony crimes may not be made unless the officer has reasonable cause to believe the crime was committed in the officer's presence.  See N.Y. C.P.L. § 140.10(1)(A) (authorizing an officer to arrest a suspect for "[a]ny offense when he has reasonable cause to believe that such person has committed such offense *in his presence*") (emphasis added).  Therefore, the cited language of the Appellate Division was neither necessary to its judgment on the merits nor addressed to the question of whether there was probable cause to believe a crime had been committed.  Defendants thus are not precluded from arguing that probable cause existed.

### D.    Malice

Plaintiff's complaint also fails to allege facts that would show malice.  "A lack of probable cause generally creates an inference of malice."  Boyd v. City of New York, 336 F.3d 72, 78 (2d Cir. 2003); indeed, a lack of probable cause is generally sufficient on its own to support such an inference.  See Ricciuti, 124 F.3d at 131.   In this case, however, plaintiff has failed to allege facts showing a lack of probable cause.  Nor does he allege in the Amended Complaint any improper motive for the officers' actions, or any other fact indicative of malicious intent.  "While the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice."  Leeds v. Meltz, 85 F.3d 51,  53 (1996).  Plaintiff has therefore failed to allege malice, as well as lack of

probable cause, and his claims for malicious prosecution must be dismissed.

**IV.   Supplemental Jurisdiction**

Because all of plaintiff's federal claims must be dismissed, the Court declines to exercise

supplemental jurisdiction over his state law claims.  See 28 U.S.C. § 1367(c)(3); United Mine

Workers v. Gibbs, 383 U.S. 715, 726 (1966); Valencia v. Lee, 316 F.3d 299, 305 (2d Cir. 2003).

<b>CONCLUSION</b>

For the foregoing reasons, the motion to dismiss (Doc #18) is granted.


SO ORDERED.

Dated:         New York, New York
               October 5, 2006

GERARD E. LYNCH<br>United States District Judge